UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CR-115 |
| | ) | (VARLAN/GUYTON) |
| JOE MEDINA GARCIA and, | ) | |
| ADALBERTO TORRES | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is now before the Court on the Defendants' Motion to Suppress Evidence [Docs. 22 & 23], filed on November 5, 2014. The parties appeared before the undersigned for a hearing on the Defendants' Motion on December 23, 2014. Assistant United States Attorney Cynthia Davidson was present on behalf of the Government. Attorneys Benjamin G. Sharp and Jonathan S. Wood were present on behalf of the Defendants, who were also present. Defense counsel requested and was granted leave to file post-hearing briefs on or before January 30, 2015. [See Doc. 27]. The Defendants filed their briefs [Docs. 30 & 31] on January 30, 2015. The Government declined to file a response.

I. **FACTS**

Based on the testimony and evidence presented at the suppression hearing on December 23, 2014, the Court makes the following findings of fact. On September 10, 2014, at

1

approximately 3:30 p.m., the Defendants were traveling east on Interstate 40 ("I-40E") at approximately the 386 mile marker in Knox County, Tennessee. The Defendants were traveling in a rental minivan with a California license plate, driven by Defendant Torres. Defendant Garcia was riding in the front passenger seat. Trooper Adam Bowman ("Trooper Bowman") was traveling on I-40E as well and observed the minivan activate the right blinker and merge into the right lane of travel. As the minivan approached a tractor trailer truck, the minivan braked, activated the blinker, and moved into the center lane of traffic in front of Trooper Bowman. The minivan came within twelve to fifteen feet of the tractor trailer truck for approximately ten seconds.

Trooper Bowman activated his lights and pulled the minivan over to the far right hand side of the highway for following too closely to the tractor trailer truck. Upon stopping the minivan, Trooper Bowman requested identification from both the Defendants and reviewed the vehicle rental agreement. Defendant Torres presented an out of state suspended driver's license that was later discovered to be a false identification. Defendant Garcia presented a valid Arizona driver's license. Upon discovering Defendant Torres' suspended driver's license, Trooper Bowman called for backup.

Two state troopers arrived on the scene. Trooper Conatser arrived on the scene approximately sixteen minutes after the initial stop, and Trooper Jonathan Scott arrived with his K9 partner approximately twenty minutes after the initial stop. The troopers requested consent to search and both Defendants consented. Upon an initial search of the interior of the minivan, the officers found two small duffle bags, a cellular phone, a GPS device, a radar detector, a

2

screwdriver, and a parking pass from Chicago, Illinois. Defendant Torres refused search of the cellular phone but did not revoke his consent to continue the search of the minivan.

Trooper Scott's K9 partner entered the back of the van through an open door and alerted on the spare tire compartment. The troopers then searched the spare tire compartment and found eleven vacuum sealed packages wrapped in plastic and black tape. The substance field tested positive for methamphetamine and weighed approximately twelve pounds or 5.46 kilograms. At this point, the Defendants were arrested and given Miranda warnings.

Drug Enforcement Administration Task Force Officer Newcome conducted consensual interviews of Defendant Garcia and Defendant Torres. Both Defendants were read Miranda warnings, given a form to read and sign, and both Defendants signed a waiver of rights form. [See Exs. 2 & 3]. During the interview, Defendant Garcia admitted that the purpose of the trip was to carry methamphetamine and that Defendants had previously traveled to Utah, Colorado, and Chicago.

## II. POSITIONS OF THE PARTIES

Defendants contend that Trooper Bowman violated the Fourth Amendment by making a traffic stop without probable cause to believe that a traffic offense had occurred. As a result, the Defendants assert that all evidence obtained after the stop, including statements made by both Defendants at the scene and during interrogation, must be suppressed.

Defendant Garcia further argues that even if this Court finds that Trooper Bowman had probable cause to stop the Defendants, Defendant Garcia was detained longer than necessary, thereby violating his Fourth Amendment rights. Defendant Garcia contends that once Trooper

3

Bowman realized that Defendant Torres was driving on a suspended license, he should have arrested Defendant Torres and let Defendant Garcia drive away in the minivan.

In response, the Government argues that the traffic stop was lawful because it was supported by probable cause. The Government contends that Trooper Bowman had probable cause to believe that a traffic violation had occurred because he saw the Defendants' vehicle following too closely, a violation of Tennessee law. The Government further answers that the scope and duration of the traffic stop was reasonable and did not violate either of the Defendants' constitutional rights.

## III. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. The Defendants argue that their rights under the Fourth Amendment were violated because the officer lacked probable cause to stop their vehicle on September 10, 2014. Defendants contend that any evidence, including any statements made to the officers, gained as a result of the illegal stop must be suppressed as the ill-gotten "fruit of the poisonous tree." [Docs. 30 & 31]. The Government maintains that the stop was proper because the officer had probable cause to believe the Defendants had committed a traffic violation. [Doc. 26].

### A. Traffic Stop

If an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993), cert. denied, 513 U.S. 828 (1994). Whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed, like other alleged Fourth Amendment violations, by objectively evaluating the officer's

4

conduct in light of the surrounding circumstances known to the officer. Id. at 388; see Whren v. United States, 517 U.S. 806, 810 (1996) (holding that "[a]s a general matter, the decision to stop an automobile is reasonable [within the meaning of the Fourth Amendment] where the police have probable cause to believe that a traffic violation has occurred"); see also United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2002) (holding that "[a] police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct"). Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). In other words, probable cause means a substantial chance or likelihood of criminal conduct. Ferguson, 8 F.3d at 392 (citing Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)).

The Court finds that Trooper Bowman lawfully stopped the Defendants' vehicle. Based upon his personal observations, Trooper Bowman had probable cause to believe that the driver of the minivan had committed the traffic violation of following too closely. See Tenn. Code Ann. § 55-8-124. Tennessee law provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway." Tenn. Code Ann. § 55-8-124(a). The statute offers the following guidance as to what constitutes following too closely, at least with regard to vehicles traveling in a caravan:

> Motor vehicles being driven upon any roadway outside of a business or residence district in a caravan or motorcade, whether or not towing other vehicles, shall be so operated as to allow sufficient space between each vehicle or combination of vehicles so as to enable any other vehicle to enter and occupy the space without danger.

5

Tenn. Code Ann. § 55-8-124(c).

In the present case, Trooper Bowman testified that he observed the Defendants' vehicle follow 12-15 feet behind the tractor trailer truck at a speed of 62-65 miles per hour. He stated that based on his years of experience and training, he did not believe that the minivan would have been able to stop safely at that speed or distance. Trooper Bowman testified that a driver's reaction time is typically 1.46 seconds, and that based on this average reaction time he did not feel that the Defendants' vehicle was traveling at a safe distance behind the tractor trailer truck.

The Defendants contend that the video of the events in question establishes that they were not following too closely. The Court disagrees. The Court has viewed the video recording of the Defendants' vehicle immediately before it was stopped by Trooper Bowman and finds that it corroborates Trooper Bowman's testimony. At the start of the video recording (15:22:10), the minivan is approximately two car lengths behind the tractor trailer truck. At 15:22:12, the minivan moves closer to the tractor trailer, applies the breaks, and travels at a distance of approximately less than one car length from the truck. The Defendants' vehicle follows at this distance until approximately 15:22:22, at which time the Defendants' left turn signal is activated and the vehicle begins moving to the center lane. Based on this video, the Court finds that Trooper Bowman had probable cause to believe that the Defendants' minivan was following the tractor trailer truck "more closely than [was] reasonable and prudent[.]" Tenn. Code Ann. § 55-8-124(a).

Defendant Torres pointed the Court to several Sixth Circuit cases in an effort to show that Trooper Bowman lacked probable cause to stop the Defendants' vehicle. [See Doc. 31]. The Court is not persuaded, and finds that several of the cases cited by Defendant Torres support a

6

finding of probable cause. In United States v. Tullock, the court found the officer did not have probable cause where the officer "recalled few objective facts to justify the traffic stop." 578 F. App'x 510, 513 (6th Cir. 2014). In this case, Trooper Bowman recalled all the facts of the traffic stop and his testimony was corroborated by the video, thereby providing sufficient evidence of Trooper Bowman's "objectively verifiable reason" to stop the Defendants' vehicle. Id. This case is also similar to United States v. Valdez, in which the officer testified that the defendant was following too closely for up to fifteen seconds. 147 F. App'x 591, 595 (6th Cir. 2005). The court explained that "[w]hen an officer observes a vehicle traveling about 60 miles per hour pull to within twenty to thirty feet of another vehicle, that officer is justified in making a stop pursuant to T.C.A. § 55-8-124(a), regardless of whether the officer uses the stop as a pretense to investigate drug activity." Id. Here, Trooper Bowman observed the Defendants' travel within 12-15 feet of a tractor trailer truck for approximately 10 seconds at a speed of 62-65 miles per hour. The Court finds that Trooper Bowman presented sufficient verifiable evidence that he reasonably believed the Defendants were following the tractor trailer truck "more closely than [was] reasonable and prudent[.]" Tenn. Code Ann. § 55-8-124(a).

Accordingly, because Trooper Bowman had probable cause to stop the Defendants for a traffic violation, the Court finds that the Defendants were properly seized under the Fourth Amendment. The stop itself provides no basis for the suppression of evidence.

**B. Duration of the Stop**

Defendant Garcia argues that even if this Court finds that Trooper Bowman had probable cause to stop the Defendants, Defendant Garcia was detained longer than necessary, thereby

7

Case 3:14-cr-00115-TAV-HBG   Document 35   Filed 03/11/15   Page 7 of 11   PageID #: 181

violating his Fourth Amendment rights. [Doc. 30 at 5-6]. The Court finds this argument to be without merit.

A traffic stop is governed by the principles set forth in Terry v. Ohio, 392 U.S. 1, 18 (1968). See United States v. Perez, 440 F.3d 363, 369-370 (6th Cir. 2006) ("Once the purpose of an ordinary traffic stop is completed, the officer may not 'further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'") (citing United States v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995)). To meet the standard of reasonableness, a seizure must be "sufficiently limited in scope and duration[.]" Florida v. Royer, 460 U.S. 491, 500 (1983).

Neither our Supreme Court nor the Sixth Circuit has seen fit to apply a bright line rule as to the duration of a seizure in order to determine reasonableness. United States v. Everett, 601 F.3d 484, 493 (6th Cir. 2010). "Rather, because the touchstone of any Fourth Amendment analysis is reasonableness, we must conduct a fact-bound, context-dependent inquiry in each case." Id. The evaluation of reasonableness is not based solely on the length of detention, but instead "the proper inquiry is whether the 'totality of the circumstances surrounding the stop' indicates that the duration of *the stop as a whole*—including any prolongation due to suspicionless unrelated questioning—was reasonable." Id. at 494 (emphasis in the original). The subject of any "suspicionless unrelated questioning" is relevant to the issue of reasonableness, and inquiries into travel plans, ownership of the vehicle, and travel history "will rarely suggest a lack of diligence." Id.

Here, Trooper Bowman had reason to detain and arrest Defendant Torres as soon as he realized he was driving on a suspended license. See United States v. Godfrey, 427 F. App'x 409,

8

411 (6th Cir. 2011) (the defendant "concedes that his detention was lawful after he admitted to driving under a suspended license"); United States v. Herrin, 468 F. App'x 444, 446 (6th Cir. 2012) (the district court found that defendant's "detention was lawful after he admitted to driving under a suspended license"). Although Defendant Garcia argues that Trooper Bowman should have arrested Defendant Torres and released Defendant Garcia, such an expectation is unreasonable. Trooper Bowman approached a vehicle with out-of-state plates, two passengers, and a driver with an out-of-state, suspended license. He testified that he intended to arrest Defendant Torres upon discovering he was driving with a suspended license. At that point, it is reasonable that Trooper Bowman would request back up. See United States v. Hall, No. 1:06CR-62-R, 2008 WL 57083, at *6 (W.D. Ky. Jan. 3, 2008) ("Given that there were two persons in the vehicle and [the officer] was alone, it was reasonable for [the officer] to call for assistance, and there is no indication that it took [the responding officer] any unreasonably large amount of time to arrive at the scene."); see also Everett, 601 F.3d at 494-95 ("the Supreme Court has emphasized that 'the safety of the officer' during a traffic stop is a 'legitimate and weighty' interest") (citing Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977)).

Not only did Trooper Bowman have good cause to request assistance, the time it took the responding officers to arrive at the scene was not unreasonable. Upon reviewing the video of the stop, it is clear that Trooper Conatser arrived on the scene in less than twenty minutes after the initial stop and Trooper Scott arrived in less than five minutes after Trooper Conatser. Once assistance arrived, Trooper Bowman testified that the Defendants were questioned individually as to their travel plans and history. The Defendants' statements were inconsistent, and at that point, the officers requested permission to search. Both Defendants consented to the search.

9

Based on the totality of the circumstances in this matter, the Court finds that the duration of time between the stop, the questioning of the Defendants regarding their travel plans and history, and the consent to search the vehicle was well within the range of reasonableness. See United States v. Knox, 839 F.2d 285, 290-91 (finding that based on the facts and circumstances of the case, a thirty-minute detention was reasonable); see also United States v. Sharpe, 470 U.S. 675, 686 (1985) ("The Court of Appeals' decision would effectively establish a *per se* rule that a 20-minute detention is too long to be justified under the Terry doctrine. Such a result is clearly and fundamentally at odds with our approach in this area.").

There is no question as to the legality of the search as both Defendants gave informed consent. The duration and scope of the traffic stop did not violate either Defendants' constitutional rights, and the Court finds that Defendant Garcia's argument to the contrary is without merit. The exclusionary rule is immaterial in this matter as the Court finds that both the traffic stop and the scope and duration of the Defendants' seizure was constitutional. All evidence obtained from the search and any statements made by either Defendant, either during or subsequent to the stop, are permissible.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Defendant's Motion to Suppress Evidence **[Doc. 22]** be **DENIED**.[5]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (affirming the Court of Appeals for the Sixth Circuit rule "conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections"). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).