UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:14-CR-115-TAV-HBG |
| JOSE MEDINA GARCIA and ADALBERTO TORRES, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation entered by United States Magistrate Judge H. Bruce Guyton ("R&R") [Doc. 35]. The R&R addresses defendant Jose Medina Garcia's motion to suppress evidence [Doc. 22], which defendant Adalberto Torres moved to adopt [Doc. 23]. Magistrate Judge Guyton held a hearing on the motion [Doc. 27]. The defendants submitted post-hearing memoranda [Docs. 30, 31]. Magistrate Judge Guyton then issued the R&R, recommending that the Court deny the request for suppression [Doc. 35]. Only defendant Jose Medina Garcia has filed an objection to the R&R [Doc. 36], and the government responded to that objection [Doc. 37]. For the reasons that follow, the Court will overrule the defendant's objections, accept the R&R, and deny the request for suppression.

## I. Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the motion to suppress, underlying and supporting briefs, government's response, evidence, R&R, and objections, all in light of the applicable law.

## II. Facts and Procedural History[1]

On September 10, 2014, at approximately 3:30 p.m., the defendants were traveling east on Interstate 40 at approximately the 386 mile marker in Knox County, Tennessee, in a rental minivan with a California license plate. Defendant Torres was driving and defendant Garcia was in the front passenger seat.

Trooper Adam Bowman was also traveling on Interstate 40. He observed the minivan activate the right blinker and merge into the right lane of travel. As the minivan approached a tractor trailer truck, the minivan braked, activated the left blinker, and merged into the center lane of traffic in front of Trooper Bowman.

As the minivan was traveling behind the tractor trailer truck, Trooper Bowman estimated that the minivan was traveling at a speed of sixty-two to sixty-five miles per hour. He further estimated that the minivan was within twelve to fifteen feet of the rear bumper of the tractor trailer for approximately ten seconds.

---

[1] Magistrate Judge Guyton's findings of fact [Doc. 35 p. 1–3] are supported by the evidence, and the defendant does not expressly object to them. To the extent that any of the defendant's objections implicate a fact found in the R&R, the Court has considered the dispute in the context of its analysis of the defendant's objections.

2

Because Trooper Bowman believed the minivan had been following the tractor trailer too closely, he activated his lights and pulled over the minivan to the far right hand side of the highway. Trooper Bowman requested identification from both passengers and a copy of the rental agreement. Defendant Torres provided an out-of-state suspended driver's license. Defendant Garcia provided a valid Arizona driver's license. Upon discovering defendant Torres's suspended driver's license, Trooper Bowman called for backup.

Two state troopers arrived on the scene. Trooper Conaster arrived approximately sixteen minutes after the initial stop and Trooper Scott arrived with his K9 partner approximately twenty minutes after the initial stop. The troopers then questioned the passengers separately, and the passengers provided conflicting stories. The troopers requested consent to search the minivan, and both defendants consented. Defendant Torres refused the request to search his cellular phone.

Upon initial search of the minivan, the officers found two small duffle bags, a cellular phone, a GPS device, a radar detector, a screwdriver, and a parking pass from Chicago, Illinois. Trooper Scott's K9 partner entered the back of the minivan through an open door and alerted on the spare tire compartment. The trooper searched the spare tire compartment and found eleven vacuum sealed packages wrapped in plastic and black tape. The substance field tested positive for methamphetamine and weighed approximately twelve pounds, or 5.46 kilograms. The troopers then arrested the defendants and gave the defendants the Miranda warnings.

3

The defendants moved to suppress all evidence obtained as a result of the traffic stop, asserting that Trooper Bowman did not have probable cause to stop the minivan and that the detention was unreasonably long. After a suppression hearing and supplemental briefing, the magistrate judge issued the R&R. In the R&R, Magistrate Judge Guyton found: (1) the stop itself provides no basis for the suppression of evidence because Trooper Bowman had probable cause to stop the minivan for a traffic violation, and (2) all evidence obtained from the search of the minivan and any statements of the defendant are permissible because the duration and scope of the traffic stop did not violate either defendants' constitutional rights [Doc. 35 p. 4–10]. He accordingly recommends that the Court deny the request for suppression [*Id.* p. 11].

**III. Analysis**

Only defendant Garcia filed an objection within the statutory period afforded to object [Doc. 36]. In large part, the defendant's objection mostly restates his original arguments. He argues: (1) that the magistrate judge incorrectly determined that Trooper Bowman had probable cause to believe a traffic violation had occurred, and (2) that defendant Garcia was detained longer than reasonably necessary because Trooper Bowman should have arrested defendant Torres at the time he learned of the suspended license and allowed defendant Garcia to take the vehicle and leave the scene [Doc. 36 p. 3–6].

Turning to the issue of probable cause for the traffic stop, Magistrate Judge Guyton determined that Trooper Bowman had probable cause to believe the minivan had

4

committed the traffic violation of following too closely, Tenn. Code Ann. § 55-8-124. The law provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway." Tenn. Code. Ann. § 55-8-124(a).

When an officer stops and detains a motorist, there is a "seizure" under the Fourth Amendment. *United States v. Cochrane*, 702 F.3d 334, 340 (6th Cir. 2012). But where an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). A court assesses whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment by objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. *Id.* at 388; *see also Whren v. United States*, 517 U.S. 806, 810 (1996) (holding that "[a]s a general matter, the decision to stop an automobile is reasonable [within the meaning of the Fourth Amendment] where the police have probable cause to believe that a traffic violation has occurred"); *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) (holding that "[a] police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct"). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United*

5

*States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In other words, probable cause means a substantial chance or likelihood of criminal conduct. *Ferguson*, 8 F.3d at 392.

Trooper Bowman testified that the minivan followed twelve to fifteen feet behind the tractor trailer at a speed of sixty-two to sixty-five miles per hour. And he testified that a driver's reaction time is typically 1.46 seconds. The trooper further testified that, based upon his experience and training, he did not believe the minivan would have been able to stop safely at that speed or distance. He thus did not believe that the minivan was traveling at a safe distance behind the tractor trailer. Yet, while defendant Garcia does not take issue with this testimony, he asserts that the video demonstrates the minivan was not following too closely.

Like the magistrate judge, the Court has reviewed the testimony of the trooper and the video of the traffic stop, which the Court finds corroborates the trooper's testimony. At the beginning of the video recording, the minivan is approximately two car lengths behind the tractor trailer truck. Two seconds later, the minivan moves closer to the tractor trailer, applies the brakes, and travels at a distance of approximately less than one car length from the truck. The minivan follows at this distance for approximately ten seconds, at which time the minivan's left turn signal is activated and the minivan begins moving into the center lane. Based on this video, the Court finds, like the magistrate judge, that Trooper Bowman had probable cause to believe that the minivan was following the tractor trailer truck "more closely than [was] reasonable and prudent." Tenn. Code Ann. § 55-8-124(a).

6

Sixth Circuit case law supports this finding. *See United States v. Jimenez*, 446 F. App'x 771, 772 (6th Cir. 2011) (finding that an officer had probable cause to believe Tenn. Code Ann. § 55-8-124(a) had been violated where he testified that he saw the defendant's vehicle, traveling at fifty-five miles per hour, come within twenty-four inches of the vehicle in front of it);*United States v. Sanford*, 476 F.3d 391, 395–96 (6th Cir. 2007) (finding that an officer who observed the defendant's vehicle momentarily follow another vehicle within a distance of ten feet while traveling sixty-five miles per hour and while a third vehicle was passing in the passing lane had probable cause to believe Tenn. Code Ann. § 55-8-124(a) had been violated); *United States v. Valdez*, 147 F. A'ppx 591, 595 (6th Cir. 2005) (finding that an officer who observed a vehicle traveling approximately sixty miles per hour pull to within twenty to thirty feet of another vehicle for fifteen seconds had probable cause to believe Tenn. Code Ann. § 55-8-124(a) had been violated).

Moreover, the Sixth Circuit case the defendant relies upon most heavily for asserting that there was no probable cause here, *United States v. Tullock*, 578 F. A'ppx 510 (6th Cir. 2013), is distinguishable. In *Tullock*, the Sixth Circuit determined an officer lacked probable cause to believe the defendant had been following too closely. In reaching this decision, the Sixth Circuit focused on the fact that the officer "recalled few objective facts to justify the traffic stop." 578 F. App'x at 513. More specifically, "[h]e could not recall the speed the vehicles were traveling, the amount of distance between them, or for how long a period [the defendant] drove too closely to the car in front of

7

them." *Id.* That simply is not the case here. The defendant also relies upon Judge Merritt's dissent in *United States v. Sanford*, but that dissent does not bind this Court, nor does it persuade the Court to find against the many cases similar to this one where the Sixth Circuit determined an officer had probable cause to believe a violation of Tenn. Code Ann. § 55-8-124(a) had occurred.

Thus, for all of these reasons, the Court agrees with Magistrate Judge Guyton that Trooper Bowman had probable cause to stop the minivan for a following too closely under Tenn. Code Ann. § 55-8-124(a).

Turning next to the duration of the traffic stop, the defendant asserts that Trooper Bowman had ample time to arrest defendant Torres for driving on a suspended license and allow defendant Garcia to drive the minivan away from the scene, which is something Trooper Bowman testified commonly happens "if all else is fine" [Doc. 36 p. 6; Doc. 29 p. 43–44]. The defendant further asserts that Trooper Bowman did not have a reasonable and articulable suspicion of criminal activity necessary to detain defendant Garcia for the time he was detained.

A traffic stop is governed by the principles set forth in *Terry v. Ohio*, 392 U.S. 1, 18 (1968). "Once the purpose of an ordinary traffic stop is completed, the officer may not 'further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" *United States v. Perez*, 440 F.3d 363, 369–370 (6th Cir. 2006) (quoting *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)). To meet the standard of reasonableness, a

8

seizure must be "sufficiently limited in scope and duration." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

There is no bright line rule as to the duration of a seizure in order to determine reasonableness. *United States v. Everett*, 601 F.3d 484, 493 (6th Cir. 2010). "Rather, because the touchstone of any Fourth Amendment analysis is reasonableness, [the Court] must conduct a fact-bound, context-dependent inquiry in each case." *Id.* The evaluation of reasonableness is not based solely on the length of detention, but instead "the proper inquiry is whether the 'totality of the circumstances surrounding the stop' indicates that the duration of *the stop as a whole*—including any prolongation due to suspicionless unrelated questioning—was reasonable." *Id.* at 494 (emphasis in the original). In this inquiry, "the overarching consideration is the officer's diligence—i.e., his 'persevering' or 'devoted application to accomplish he undertaking' of ascertaining whether the suspected traffic violation occurred, and, if, necessary, issuing a ticket." *Id.* at 494 (citation omitted). The subject of any "suspicionless unrelated questioning" is relevant to ascertaining diligence, and an officer's inquiries into travel plans, ownership of the vehicle, and travel history "will rarely suggest a lack of diligence." *Id.*

The Court agrees with the magistrate judge that the detention here was not unreasonable in scope or duration. Trooper Bowman approached a vehicle with an out-of-state license plate, two passengers, and a driver with an out-of-state suspended license. While he could have arrested defendant Torres upon the discovery of his suspended license, it was not unreasonable to request backup at that point. *See United States v. Hall*,

9

No. 1:06CR-62-R, 2008 WL 57083, at *6 (W.D. Ky. Jan. 3, 2008) ("Given that there were two persons in the vehicle and [the officer] was alone, it was reasonable for [the officer] to call for assistance, and there is no indication that it took [the responding officer] any unreasonably large amount of time to arrive at the scene."); *see also Everett*, 601 F.3d at 494–95 (noting that "the Supreme Court has emphasized that 'the safety of the officer' during a traffic stop is a 'legitimate and weighty' interest" (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977))). And the time it took for the back-up officers to arrive on the scene was not unreasonable. *See United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (finding detention reasonable where the entire investigation lasted less than one hour with approximately thirty-five minutes spent waiting for a canine unit to arrive); *United States v. Knox*, 839 F.2d 285, 290–91 (6th Cir. 1988) (finding a thirty-minute detention was not inherently unreasonable). Further, once backup arrived, the troopers questioned the defendants separately, inquiring about their travel plans and histories. The defendants' statements were inconsistent, so the troopers asked to search the minivan. Both defendants consented to the search. *See United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010) ("When Garrett contradicted Williams's story as to their destination, that—in addition to the prior evidence—gave [the officer] reasonable suspicion to extend the stop further and ask for permission to search the vehicle."). Based upon these circumstances, the Court agrees with the magistrate judge that the duration of the time between the stop and the consent to search the vehicle was within the range of reasonableness. *See United States v. Sharpe*, 470 U.S. 675, 686

10

(1985) ("The Court of Appeals' decision would effectively establish a *per se* rule that a 20-minute detention is too long to be justified under the *Terry* doctrine. Such a result is clearly and fundamentally at odds with our approach in this area.").

## IV. Conclusion

Accordingly, upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. The defendant's objections [Doc. 36] are **OVERRULED.** The Court **ACCEPTS in whole** the R&R [Doc. 35] and incorporates it into this Memorandum Opinion and Order. The Court **GRANTS** defendant Adalberto Torres's Motion to Adopt defendant Jose Medina Garcia's Motion to Suppress [Doc. 23], but **DENIES** defendant Jose Medina Garcia's Motion to Suppress [Doc. 22] and defendant Adalberto Torres's request to grant the motion to suppress.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE